UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
EL AL ISRAEL AIRLINES, LTD.,              :
                                          :
                        Plaintiffs,       :
                                          :         11 Civ. 8313 (KBF)
            -v-                           :
                                          :         OPINION & ORDER
15 EAST 26 OWNER, L.L.C.,                 :
                                          :
                        Defendant.        :
------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

Lawyers can be, and sometimes need to be, quite creative. But, a lawyer's creative argument and the correct outcome for a case may, under certain circumstances, conflict. That is the situation here. The instant action requires a straightforward reading of a contract and application of longstanding New York law. It does not require a strained interpretation, a resort to extrinsic evidence, or a tutorial in the "why's" and "why not's" of various ways lease escalation clauses could be or should be drafted. It just isn't that hard.

On October 14, 2011, Plaintiff El Al Israel Airlines, Ltd. ("El Al" or "Plaintiff") commenced this action for breach of contract and declaratory relief. On January 30, 2012, Plaintiff filed an Amended Complaint.[1] (Amend. Compl., Jan. 30, 2012, ECF No. 12.)

---

[1] El Al also requests reimbursement of attorneys' fees and expenses related to the costs of this action; Defendants 15 East 26 Owner, L.L.C. ("15 East 26") and Madison Park Owner, LLC ("MPO") counterclaimed for payment of the attorneys' fees they incurred in defending this action. (See 15 East 26 Ans., Jan. 10, 2012, ECF No. 9; MPO Ans., Jan. 10, 2012, ECF No. 10.) On February 23, 2012, both 15 East 26 and MPO filed Amended Answers and Counterclaims. (See 15 East 26

1

FACTUAL BACKGROUND

On September 24, 2003, El Al entered into a lease with 15 East 26th Street Associates, LLC ("the Lease"). (Pl.'s R. 56.1 Stmt. ¶ 3, Feb. 13, 2013, ECF No. 30.)[2] The Lease provides that in addition to its periodic rental payments, El Al would make a "Tax Payment" equal to 5.3% of the amount by which the Landlord's "Real Estate Taxes" for a particular year exceed those of a pre-defined "Base Tax Year." (Id., Ex. A § 38.A.) Put another way, the Base Tax Year set forth in the Lease establishes the comparison point against which El Al's Tax payment is determined. (See Pl.'s Mem. Supp. M. Summ. J. at 3-4, Feb. 12, 2013, ECF No. 27.) If the Landlord had to pay more in Real Estate Taxes than it did in the Base Tax Year, then El Al would have to pay 5.3% of that amount. (Id. at 3-4, n.3.)

On August 16, 2004, 15 East 26th Street Associates, LLC conveyed the building from which El Al was leasing space to MPO, making MPO the Landlord. (Pl.'s R. 56.1 Stmt. ¶¶ 13-14.) On April 22, 2008, MPO effectuated a conversion of the upper 12 floors of the premises into condominiums.[3] (See Pl.'s Mem. Supp. M.

---

Amend. Ans., Jan. 23, 2012, ECF No. 14; MPO Amend. Ans., Jan. 23, 2012, ECF No. 15.)
[2] The Lease expires on July 31, 2019. (Pl.'s R. 56.1 Stmt. ¶ 5.)
[3] On or about April 22, 2008, MPO filed a declaration with the Office of the City Register establishing a condominium comprised of 72 residential units. (Pl.'s R. 56.1 Stmt. ¶ 15.) Thereafter, the commercial premises occupied by El Al and the residential units were defined differently under a "Reciprocal Easement and Operating Agreement" ("REO") also filed with the City Register. (Id. ¶¶ 17-20.) The REO states that each property shall be separately assessed and taxed as separate parcels of real estate. (Id. ¶ 21.) The REO provides that "the owner of the Commercial Property shall pay the real estate taxes on the Commercial Property (id. ¶ 22), and that the residential unit owners would pay applicable taxes associated with their units, including real estate taxes (id. ¶ 23).

2

Summ. J. at 1.) The conversion resulted in a reduction of the Real Estate Taxes paid by the owner of the commercial property because individual owners of those condominiums assumed their own proportionate tax obligations. (Pl.'s Mem. Supp. M. Summ. J. at 2, 4-5.)

On December 10, 2010, MPO conveyed the commercial portion of the property to 15 East 26 Owner, LLC ("15 East 26" or "Landlord").[4] (Pl.'s R. 56.1 Stmt. ¶ 25.) According to El Al, it overpaid in Tax Payments beginning in the 2010/2011 Tax Year because the Real Estate Taxes for the Base Tax Year were higher than the Tax Payments due in those years. (See Amend. Compl. ¶¶ 21-24.)

15 East 26 claims entitlement to past amounts paid by El Al, as well as future amounts should its payment remain below the Base Tax Year, based on a contorted definition of the words "Landlord" and "Owner" in the Lease. (See generally Def.'s Opp'n, March 22, 2013, ECF No. 33.[5]) While a creative argument, it does not earn a passing grade. 15 East 26 argues that the definition of "Landlord" and "Owner" in the Lease should be read to include all of the new, individual unit owners (see id. at 5-6, 9-10) – none of whom, of course, have any contractual relationship with El Al. 15 East 26 reasons that since the Landlord projects that

---

[4] On February 24, 2012, 15 East 26 advised El Al that it transferred its interest in the property to 15 East 26th Street Property Investors II, LLC. (Pl.'s R. 56.1 Stmt. ¶ 28.) However, since 15 East 26 owned the property in question at the time this action was filed, it is referred to as "the Landlord" for purposes of this decision.
[5] This Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment is filed only by Defendant 15 East 26, which notes that "at some point[,] El Al chose to 'release' [MPO]." (Def.'s Opp'n at 4.) In fact, on August 28, 2012, Plaintiff filed a Stipulation of Dismissal with Prejudice as to MPO, dismissing MPO from the action.

3

overall real estate taxes payable by all "owners" in the building itself exceed the Base Tax Year, El Al should continue to make its payments. (See id. at 19.)

However, according to clear contractual language, El Al has no contractual obligation to pay any amount with respect to the Real Estate Taxes unless the Landlord had to pay more than they did in the Base Tax Year. That has not yet occurred since the condominium conversion. For several years, El Al in fact paid what the Landlord stated was due. As El Al had and has no obligation to make any such payments unless the Base Tax Year is exceeded by the Landlord's own payments, previous amounts paid by El Al must be repaid; and there is no requirement to pay going forward unless the contractual terms of payment have been met.

Accordingly, and for the reasons set forth below, the Court GRANTS El Al's Motion for Partial Summary Judgment.[6]

## THE LEASE

The provisions of the Lease are clear and unambiguous.

Section 38 provides for "Escalation Payments." (Amend. Compl., Ex. A § 38.)

Section 38.A(1) provides that for each Tax Year El Al shall pay as Additional Rent, the Tax Payment. (Id., Ex. A § 38.)

Section 38.A(2)(a) defines Real Estate Taxes as "the sum of the real estate taxes and assessments . . . payable by the Landlord during any tax year." (Id., Ex. A § 38.A(2)(a)(emphasis added).)

---

[6] El Al's Motion is directed at Count One (breach of contract) and Count Four (attorneys' fees).

4

Section 38.A(2)(c) defines "Tax Payment" as the "Tenant's Percentage[7] of the amount by which the Real Estate Taxes payable for a Tax Year exceed the Real Estate Taxes for the Base Tax Year . . ." (Id., Ex. A § 38A.(2)(c).)

Section 37A defines Base Tax Year as the twelve (12) month period commencing on July 1, 2003 and ending on June 30, 2004, at the rates applicable to such fiscal period. (Id., Ex. A § 37A.)

The Base Year Real Estate Taxes were $1,781,764.00. (Aff. of Hanna Woskoboinik in Supp. M. Partial Summ. J. ("Woskoboinik Aff."), Ex. E at 2, Feb. 12, 2013, ECF No. 28.)[8]

The Landlord does not pay any real estate taxes on behalf of the residential condominium unit owners.[9] (Pl.'s R. 56.1 Stmt. ¶ 29.)

The Lease also provides that "[i]n the event of a dispute between the parties which results in litigation or arbitration, the losing party shall pay the prevailing party's reasonable attorney's fees and litigation costs." (Amend. Compl., Ex. A, § 19.)

---

[7] The Tenant's Percentage is defined in Section 37.I as 5.3%. (Amend. Compl., Ex. A § 37.I.)

[8] 15 East 26 dispute this statement without any factual support; they fail to offer an alternative "Base Tax Year" – and "Base Tax Year" is clearly referred to on the face of the document itself. The sole reasonable inference that can be drawn is that "Base Tax Year" when used between the Landlord and the Tenant here, carries the meaning it has as a defined term in the Lease.

[9] Here, too, 15 East 26 purports to offer a disingenuous dispute – claiming that all unit owners pay real estate taxes. (See Def.'s R. 56.1 Stmt. ¶ 29, March 26, 2013, ECF No. 35.) This is not responsive to the point being made by Plaintiff – which is that the Landlord did not pay Real Estate Taxes "on behalf of" those owners. (See Pl.'s R. 56.1 Stmt. ¶ 29.) That portion of the statement is therefore undisputed.

The Real Estate Taxes for the Commercial Property for the Tax Year 2009/2010 were $1,305,406.00. (Pl.'s R. 56.1 Stmt. ¶ 31.)[10] The Real Estate Taxes for the Commercial Property for the Tax Year 2010/2011 were $1,299,312.00. (Id. ¶ 33.)[11] The Real Estate Taxes for the Year 2011/2012 were $1,132,963.00. (Id. ¶ 35.)[12]

Walter & Samuels, as Managing Agent for the Landlord, sent El Al a Tax Statement dated February 1, 2011 for the 2009/2010 Tax Year in the amount of $59,922.07. (Def.'s R. 56.1 Stmt. ¶ 38.) The Managing Agent sent a Tax Statement for the 2010/2011 Tax Year in the amount of $61,558.23. (Pl.'s R. 56.1 Stmt. ¶ 39.)[13] El Al has continued to escrow amounts for Tax Payments in the event of an adverse judicial determination on this issue.

## LEGAL STANDARDS

### I. Summary Judgment

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating "the absence of a genuine issue of

---

[10] 15 East 26 offers a confusing disputation and partial acknowledgment – with no facts. (See Def.'s R. 56.1 Stmt. ¶ 31.) The Court deems this fact undisputed.
[11] Defendants' response to this statement is similarly unclear and without contrary factual support. (See Def.'s R. 56.1 Stmt. ¶ 33.) The Court therefore deems it undisputed.
[12] Defendants' response to this statement is similarly unclear and without contrary factual support. (See Def.'s R. 56.1 Stmt. ¶ 35.) The Court therefore deems it undisputed.
[13] Defendants dispute this statement without offering any contrary evidence. The Court therefore deems it undisputed. (See Def.'s R. 56.1 Stmt. ¶ 39.)

material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making that determination, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings. Fed. R. Civ. P. 56(e); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir.2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). In addition, self-serving, conclusory affidavits, standing alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment. See BellSouth Telecommc'ns, Inc. v. W.R. Grace & Co.-Conn., 77 F.3d 603, 615 (2d Cir.1996).

II. Principles of Contract Interpretation

Under New York law, the initial interpretation of a contract is a matter of law for the Court. International Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002). If the language of a contract is unambiguous, the court may grant summary judgment as a matter of law. Id.

III. Tax Escalation Provisions

Under New York law, a tenant is not obligated to pay an increase in real estate taxes that the landlord is not obligated to pay, unless the tax escalation clause in the lease provides for an unequivocal intent that the tenant make such payments. See In re Barney Mac, LLC, No. 04 Civ. 17768, 2006 WL 2864974, at *9 (Bankr. S.D.N.Y. Oct. 3, 2006); Wellington Tower Assoc. L.P. v. New York First Ave. CVS, Inc., 770 N.Y.S.2d 859, 859, 3 A.D.3d 460 (1st Dep't 2004). If the law were otherwise, the landlord would reap a windfall. See Wellington Tower, 770 N.Y.S.2d at 859.

The issues raised here are similar to those at issue in 1152 First Ave. LLC v. MNY Holdings Assoc. LLC, 798 N.Y.S.2d 512, 4 Misc.3d 925 (Civ. Ct. N.Y. Cty. 2003), aff'd, 798 N.Y.S.2d 714 (N.Y. Supp. App. 2004). There, as here, a building was converted from commercial to a mixed residential (condominium) commercial property. Id. at 513. Prior to the conversion, taxes were payable on the basis of a single tax lot – subsequent to the conversion numerous tax lots existed. Id. The lease agreement between the commercial tenant in 1152, as here, had a provision for tax payments based on a percentage over a base year. Id. at 513-14. There, as here, the landlord continued to bill the tenant for tax payments even when its own tax payments were below the base year following the conversion. Id. The landlord argued there, as here, that the lease needed to be reinterpreted with then existing use and ownership so as to create an equitable result. Id. at 514-15. The court declined to engage in post hoc reformation of an otherwise clear contract. Id. at 516.

8

The Appellate Division affirmed on the basis that, <u>inter alia</u>, to reform the contract would provide a windfall to the landlord. <u>See</u> <u>1152 First Av. LLC</u>, 798 N.Y.S.2d at 714.

## DISCUSSION

There is no triable issue of fact that the Landlord has not paid Real Estate Taxes in excess of the Base Tax Year beginning in the 2009/2010 Tax Year. As the contractual provisions make clear, El Al therefore had no obligation to make any Tax Payment for those years. In future tax years, El Al will only have an obligation to make a Tax Payment if the amount of Real Estate Taxes paid by the Landlord itself – not inclusive of residential owners who are not "itself" – exceeds the Base Tax Year. Under such circumstances, New York law supports the plain reading of the contract; it does not support a unilateral or court imposed post hoc reformation.

15 East 26 argues that if the Court only understood that tax escalation clauses are routine in commercial contracts, it would recognize that some tax payment should be required even when the circumstances relating to the property (and the applicable Base Tax Year) have changed. The Court is not persuaded. The Lease terms with El Al were apparent when the decision to proceed with the condominium conversion was made. Presumably, the conversion carried more value than receiving a windfall of 5.3% of non-existent taxes.

15 East 26 also argues that the word "Landlord" should be read expansively to encompass all of the residential owners. This is illogical. The Lease is not

9

between El Al and any one of the residential owners – they owe no obligations to El Al, or El Al to them.

15 East 26 also makes definitional arguments as to the words "Building" "Land," and "Known," but these arguments are equally unpersuasive. The space that El Al rents is 15 East 26th Street. The residential condominium owners are located adjacent to that at 15 Madison Park North. According to 15 East 26, since the earth that is under the 15 Madison Park North units and 15 East 26th Street space is the same, it should be considered all to be "known" as 15 East 26th Street, and that therefore, all taxes on that shared earth should be included within the Real Estate Taxes and measured against the Base Tax Year. According to 15 East 26, Plaintiff's argument results in the Lease originally providing for a Tax Payment based on all the Real Estate Taxes associated with the earth underneath 15 East 26th Street – and now, once the 15 Madison Park North units are deducted – it does not. Thus, 15 East 25 argues that equity requires that the Court view the earth upon which the two properties are located, though separately owned and separately taxed, as one. The Court declines to take this approach. Were the Court to accept this argument, it would provide the Landlord a windfall.[14]

---

[14] The Landlord argues that not accepting its interpretation provides El Al with a windfall. That is not so. El Al bargained to pay a portion of a cost that might or might not be incurred by the Landlord – those Real Estate Taxes above the Base Tax Year. That bargain worked out to its advantage. El Al is simply getting what it bargained for.

Case 1:11-cv-08313-KBF Document 43 Filed 09/26/13 Page 11 of 11

Finally, the Lease clearly provides for the payment of attorneys' fees and litigation costs to the prevailing party. El Al is the prevailing party and accordingly, is entitled to its reasonable fees and litigation costs.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Partial Summary Judgment as to Counts One and Four is GRANTED. However, this decision effectively disposes of the entirety of the action.[15] Accordingly, the parties are ORDERED to confer on an appropriate proposed Order of Judgment and to submit their joint proposal within two weeks of the date of this Opinion & Order.

The Clerk of Court is directed to close the motions at ECF No. 26. The parties are directed to submit a letter by **October 15, 2013** setting forth the claims that are left, if any, and against whom.

SO ORDERED.

Dated: New York, New York
September 26, 2013

_____
KATHERINE B. FORREST
United States District Judge

---

[15] The Counterclaims for attorneys' fees are premised upon the Landlord prevailing, which it did not. The remaining Counts seek declarations that are determined by the outcome of this decision.

11